HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARCO SANTIAGO,

        Plaintiff,

v.

BRUCE C. GAGE, RYAN HERRINGTON, and SCOTT LIGHT,

        Defendants.

CASE NO. 3:18-cv-05825-RBL

ORDER

DKT. # 49

**INTRODUCTION**

THIS MATTER is before the Court on the Report and Recommendation (R&R) of Magistrate Judge J. Richard Creatura. Dkt. # 49. The underlying case concerns the attempt by Marco Santiago, a male-to-female transgender prisoner, to obtain treatment for Gender Dysphoria. Although Santiago is now undergoing the hormone therapy she originally sought, she has sued several Washington Department of Corrections (DOC) employees for delaying her treatment. She claims that this delay violated her Eighth Amendment right to be free from cruel and unusual punishment.

Both parties moved for summary judgment, with Defendants arguing that there was no deliberate indifference and that they are entitled to qualified immunity as a matter of law. The

R&R denied Santiago's Motion in full and granted Defendants' Motion with respect to the claims against Bruce Gage. The Court ADOPTS this part of the R&R. However, Judge Creatura denied Defendants' Motion with respect to Defendants Ryan Herrington and Scott Light. The Court DECLINES TO ADOPT this part of the R&R because Defendants Herrington and Light are qualifiedly immune from suit.

## BACKGROUND

The background facts of this case can be found in the R&R, but the Court will nonetheless provide a basic narrative. Santiago was diagnosed with Gender Dysphoria on August 16, 2017, and clinical assessments were completed by November 20, 2017. On January 5, 2018, Santiago attempted self-castration and was treated by Defendant Light, a certified physician's assistant at the Stafford Creek Correctional Facility where Santiago was being held.

On February 8, 2018, a special care review committee addressing gender dysphoria (which includes Defendant Gage, the DOC's Chief of Psychiatry) met but was unable to discuss Santiago's case for scheduling reasons. The committee did not meet again until March 26, when it determined that Santiago's case required additional psychological testing. When the committee met again on July 12, it considered the results of the testing and authorized Santiago's hormone therapy.

In the meantime, on May 9, a "blood work up" on Santiago revealed that she had slightly elevated prolactin levels. These results caused Defendant Herrington, the Medical Director at the Stafford Creek Correctional Center, to delay treatment pending an additional consultation with an endocrinologist (it is unclear when Herrington ordered the consultation but his declaration suggests it was before the committee's July 16 meeting). *See* Dkt. # 40 at 2. That consultation was completed on August 30. Defendant Light, who had by this time become Santiago's primary

care provider, approved the hormone treatment on October 12 and it began on November 3. Light states that he could not have ordered treatment before the endocrinology consultation required by Herrington was completed and then could not fit Santiago into his schedule until October 12. Dkt # 41 at 3-4. There is no evidence indicating that either Herrington or Light had ulterior motives for delaying Santiago's treatment another three months after the committee's July 16 authorization.

**DISCUSSION**

With respect to the delay to Santiago's treatment after the July 16 committee meeting, Judge Creatura concluded that there were disputes of fact as to whether Defendants Herrington and Light violated Santiago's Eight Amendment rights by interfering with her treatment. Dkt. # 49 at 20 & 23-24. He also determined that Herrington and Light were not entitled to qualified immunity. Dkt. # 49 at 24-28. Defendants object strenuously to both proposed outcomes, *see* Dkt. # 52, but the Court need only analyze qualified immunity.

The goal of qualified immunity is to shield public officials from civil damages for reasonable mistakes to ensure that the specter of liability does not "unnecessarily paralyze their ability to make difficult decisions in challenging situations." *Mueller v. Auker*, 576 F.3d 979, 992-93 (9th Cir. 2009). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 992 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Questions regarding qualified immunity should be resolved "at the earliest possible stage in the litigation" because, "like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (internal quotations omitted).

Under qualified immunity, a government official can only be exposed to liability if "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct

was clearly established at the time." *Easley v. City of Riverside*, 890 F.3d 851, 856 (9th Cir.) (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (internal quotation omitted)). The second element further breaks down into "two discrete sub-elements: 'whether the law governing the conduct at issue was clearly established' and 'whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law.'" *Id.* (quoting *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014)). Although there need not be a "case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here, the inquiry turns on the second element. Judge Creatura determined that prisoners have a clearly established right to obtain medical care without intentional interference by officials. *See* Dkt. # 49 (citing *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) and *Portillo v. Johnson*, 94 F. App'x 457, 459 (9th Cir. 2004)). Judge Creatura then concluded that, because the DOC's Offender Health Plan did not allow a primary care provider to intervene in a committee decision unless they re-present the case or circumstances change significantly, Defendants Herrington and Light violated clearly established law by delaying Santiago's treatment. Dkt. # 49 at 26-27.

The Court disagrees with this reasoning. As Defendants emphasize, the Seventh Circuit recently held that a prison employee was qualifiedly immune from suit in a situation very similar to this. In *Mitchell v. Kallas*, the plaintiff's claim against one of the defendants also concerned "the length of time it took for the [hormone therapy] assessment to be completed." 895 F.3d 492, 500 (7th Cir. 2018). Although the court did not dispute the serious nature of gender dysphoria, it did observe that there is "little evidence about the typical length of . . . evaluations" for the appropriateness of hormone therapy. *Id.* Indeed, several courts have held that evaluations taking

well over a year do not constitute deliberate indifference. *Id*. (citing *Arnold v. Wilson*, No. 1:13cv900, 2014 WL 7345755, at *6 (E.D. Va. Dec. 23, 2014) (24–month delay in prescribing hormones); *Rowe v. Corr. Med. Servs., Inc.*, No. 1:08-cv-827, 2010 WL 3779561, at *6–7 (W.D. Mich. Aug. 18, 2010) (15–month delay)).

Given this ambiguity about the appropriate length of the evaluation process for hormone therapy, Herrington's decision to wait for one additional consultation and Light's acquiescence in that process were not clearly unconstitutional. It simply does not follow from a broad rule against interference with medical treatment that a doctor cannot require an extra test before implementing a previously-prescribed regimen (indeed, Herrington may have ordered the consultation before the committee authorized treatment and results arrived just six weeks after the committee's authorization). Unlike the defendants in *Lopez*, who simply ignored the plaintiff's need for a liquid diet, *see* 203 F.3d at 1132, there is no evidence that Herrington's actions arose from anything but a desire to follow "prudent practice." Dkt. # 40 at 2. This act of medical judgment was not clearly unconstitutional.

Nor can the DOC's Offender Health Plan elevate conduct that would otherwise be ambiguous to the level of clearly unconstitutional. The R&R relies heavily on the fact that, once the committee authorized Santiago's treatment, it became classified as "[m]edically necessary," a decision that can only be appealed if a primary care provider re-presents the case to the committee or if "clinical circumstances . . . change significantly." Dkt. # 49 at 26; Dkt. # 39-1 at 8, 12. But even if waiting for an extra consultation was a violation of the Offender Health Plan (which is debatable), such a violation of the DOC's own policy does not automatically have constitutional ramifications. The fact that Herrington simply waited for the consultation results rather than going through the bureaucratic process of re-presenting Santiago's case is irrelevant;

in fact, re-presenting the case likely would have caused an even longer delay. The endocrinology consultation ultimately arose from a difference of medical opinion, which does not clearly amount to unconstitutional interference under these circumstances.

**CONCLUSION**

Because the Court holds that Defendants Herrington and Light have qualified immunity, Santiago's claims against them are DISMISSED along with her claims against Defendant Gage. Santiago's pending Motion to Appoint Counsel is therefore MOOT. *See* Dkt. # 50. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 15th day of November, 2019.

Ronald B. Leighton
United States District Judge